EXCELSIOR SUPPLY CO. et al. v. WEED CHAIN TIRE GRIP CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   July 27, 1911.   Rehearing Denied October 5, 1911.)

No. 1,730.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CHAIN TIRE GRIP.

The Parsons patent, No. 723,299, for a chain tire grip, consisting of two metal rings or hoops, one on either side of the tire, of smaller diameter than the periphery of the wheel, and connected by transverse chains extending across the face of the tire, so loosely that the device is free to travel circumferentially around the wheel, is in such feature novel and discloses patentable invention, also *held* infringed.

2. PATENTS (§ 30*)—INVENTION—ARRANGEMENT OR ADJUSTMENT.

Arrangement or adjustment of a device or its parts where it makes operative and practicable what was before inoperative and impracticable, and is not itself so obvious that its utilization is not of higher merit than the mechanic's skill, may be the basis of invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 34;   Dec. Dig. § 30.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Weed Chain Tire Grip Company, Harry D. Weed, and the Parsons Nonskid Company, Limited, against the Excelsior Supply Company and the Motor Appliances Company. Decree for complainants, and defendants appeal. Modified and affirmed.

For opinion below, see 179 Fed. 232.

The appeal is from an interlocutory decree, enjoining appellants, their respective officers, associates, etc., from infringing letters patent No. 723,299, issued March 24, 1903, to Harry Parsons, for a new and useful improvement in anti-slipping and anti-puncturing devices for the tires of vehicles and for like purposes. Claims 1 and 6 of the patent sued upon (types of all the claims) are as follows:

"1. Anti-slipping or protective means for the peripheries of wheels, pulleys, or the like, comprising attaching elements at opposite sides of the wheel, and an anti-slipping or protective medium secured to the attaching elements and extending across and around the periphery of the wheel, said parts being disconnected from though retained on the wheel whereby the anti-slipping or protective medium is free to move or shift its position around the periphery thereof."

"6. Anti-slipping or protective means for the peripheries of wheels, pulleys, or the like, comprising two rings or annuli at opposite sides of the wheel,

and an anti-slipping or protective medium consisting of a chain or chains secured to the rings and extending across and around the periphery of the wheel, said parts being disconnected from but retained on the wheel whereby the anti-slipping or protective medium is free to move or shift its position around the periphery thereof."

The following drawings show two forms claimed to be under the patent in suit, and two forms claimed to be infringing devices:

### COMPLAINANTS' GRIPS.
Complainants' Chain Grip as sold in Europe by Parsons Company.

### DEFENDANTS' GRIPS.
Defendants' Zig Zag Chain Grip as sold by Excelsior Supply Company.

Complainants' Chain Grip as sold in this country by Weed Company.

Defendants' Victor Chain Grip as sold by Excelsior Supply Company.

The purpose of the patent, and the way such purpose is carried out, is described by the patentee as follows:

"It has been proposed to guard against slipping and puncturing by incorporating an anti-slipping or anti-puncturing device in the tire itself, which has the effect of slowing it considerably or causing disintegration and having other objectionable features. According to my invention I overcome these objections by providing a separate construction, giving, in effect, a nonslip-

ping medium between the surfaces in contact, and merely suspending on or engaging with the wheel, but not fixed thereto, and it is therefore free to travel around the wheel by the action of rolling contact.

"The device constituting my invention consists of a network of rings or strips of metal or other suitable material or a series of small chains or bands fitting loosely over the periphery of the wheel or passing from side to side across the tire—that is, not incorporated with it—and prevented from coming off by two rings, hoops, or their equivalent, preferably of wire or other suitable material, such rings or the like, or one of them, being provided, if desired, with means of attachment and detachment, such as a right and left hand screw-thread and nut, and the said rings or the like being smaller in diameter than the periphery of the wheel they cannot come off accidentally."

Other patents cited are the following:

No. 98,126, R. W. Thomson, Dec. 21, 1869.
No. 135,128, D. W. Kellogg, Jan. 21, 1873.
No. 275,035, O. F. Gilbert, April 3, 1883.
No. 334,322, T. B. Williams, Jan. 12, 1886.
No. 384,797, H. G. Tipping, June 19, 1888.
No. 482,599, I. Townsend, Sept. 13, 1892.
No. 567,245, J. H. Lowrey, Sept. 8, 1896.
No. 589,019, M. O'Brien, Aug. 31, 1897.
No. 589,163, M. Choquette, Aug. 31, 1897.
No. 595,099, E. H. Graves, Dec. 7, 1897.
No. 631,142, D. W. Williams, Aug. 15, 1899.
No. 639,846, J. Coan, Dec. 26, 1899.
No. 667,457, E. C. Rehfeld, Feb. 5, 1901.
No. 675,710, C. Bonagente, June 4, 1901.
No. 681,173, Maxim & Bardwell, Aug. 20, 1901.
No. 710,562, P. De Caters, Oct. 7, 1902.
No. 768,495, H. D. Weed, Aug. 23, 1904.
No. 781,318, H. D. Weed, Jan. 31, 1905.
German Patent to Haase & Sohn, No. 65,343, May 22, 1892.
No. 95,493, Ernest Rosenberg.
Wertheim Swiss Patent No. 15,097, July 29, 1897
Thomson British Patent No. 2,986 of 1867.
Thomson British Patent No. 2,630 of 1870.
Archer British Patent No. 3,046 of 1871.
Lee et al. British Patent No. 14,499 of 1892.
Gifford Patent No. 13,974 of 1896.
Clark British Patent No. 18,003 of 1897.
British Patent No. 14,719 of 1898.
British Patent No. 5,625 of 1899.
Further facts will be found in the opinion.

Thomas F. Sheridan, for appellants.
Frederick S. Duncan and Edward Rector, for appellees.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion.   [1] The advantages claimed for the patented device are thus stated by counsel, repeated in the opinion of the Court below:

"The construction of the device by which it is loose on the wheel and free to travel circumferentially around it when in action gives several important results referred to in the patent. In the first place, the 'freedom to travel' adds very materially to the antislipping qualities of the device, in effect continuously laying down on the ground in front of the tire 'a nonslipping medium,' consisting of a series of loose cross chains, under conditions affording a maximum of traction result. In the next place, it prevents the disintegration of the rubber tire, which, as suggested in the patent, in all other proposed constructions had proved a fatal obstacle to the use of a metal

traction device on a rubber tire. Again, it prevents the inevitable and objectionable 'slowing' of the tire in action, which occurs where metal traction plates or similar parts are incorporated in the tire."

The Court below adds:

"It is true, and clearly disclosed by the evidence, that circumferential creeping, or what Parsons calls traveling around the wheel by the action of rolling contact, was not new with him as a practical result, but he was the first to claim and fully utilize it, and understand its significance in the art. It is the inevitable law of the rolling wheel. It is even difficult to keep the tire itself from creeping forward on the rim. This tendency has been well understood from the time of the bicycle. And when an antislipping device is put on the tire, however firmly, it will travel around it. All other inventions, however, conceived the notion that this circumferential creeping was a detriment, and must be prevented in order to get traction and prevent slipping. Parsons was the first to understand that this motion was beneficial, that the best traction would be given by utilizing it, as well as the best form of anti-skidding. He therefore reversed the prevailing idea that this motion must be prevented as much as possible, and specified a loose grip, 'merely suspended on or engaging with the wheel, but not fixed thereto,—free to travel around it.' He also contrived a novel means of carrying his idea into practical application, that is, by a loose grip, held upon the tire by side-members of sufficiently less diameter than the tire to securely retain the device in place. Neither of these things had been done before. This is not an attempt to patent a function, result, idea, or abstraction, but a new conception and new embodiment of that conception, producing an improved result, useful in itself, and commercially successful. It is entitled to liberal treatment, both as to anticipation and infringement."

The Parsons device, we think, is correctly described and characterized in these quotations.

There are a number of patents in the record,[1] known as metal traction devices, substantially like the patent in suit except that they are relatively narrow, intended to be placed upon the tread of a deflated tire and held in position on the tire by the tight inflation of the tire; that is to say, the radial pressure of the wheels. Of course, this pressure contemplated that there should be no movement of the bands around the wheel. They were, in this respect, different, both in underlying principle and in construction, from the patent in suit; nor would they have answered, we think, for automobiles (they were devised for bicycles), where the strain is hundreds of times greater than on a bicycle. The most these patents do is to point out and illustrate the prior use of metal for an anti-skidding band.

There are also a number of patents in the record,[2] known as metal armors or jackets. But all these devices were constructed with the idea of rigid attachment to the tire. The tendency of these devices, in common with all other devices, to creep, is not the "freedom to travel" that Parsons sought. They are incapable of freedom of circumferential travel. None of these constitute anticipation, in our opinion.

[1] Patents Nos. 595,099, E. H. Graves, Dec. 7, 1897; 667,457, E. C. Rehfeld, Feb. 5, 1901; 135,128, D. W. Kellogg, Jan. 21. 1873, and others.

[2] Patents Nos. 98,126, R. W. Thomson, Dec. 21, 1869; 567,245, J. H. Lowrey, Sept. 8, 1896; 639,846, J. Coan, Dec. 26, 1899; British Patents Nos. 3,046, Archer, 1871; 14,719, Rose, 1898, and others.

Neither do the Gilbert nor Thomson devices, pressed upon us at re-argument, constitute anticipation. The Parsons concept was an entirely novel one in connection with automobile anti-skidding devices. It reversed entirely the prevailing notion that an anti-skidding device must, as far as possible, be integral with the tire. Gilbert and Thomson had no knowledge of automobiles, bicycles, or pneumatic tires of any kind and, therefore, could not have preconceived the Parsons concept. At most their devices are mere rough embryos, in an altogether different connection, of some features of what subsequently became the mechanical embodiment of the Parsons concept.

Patent No. 681,173, issued October 20, 1901, to Maxim & Bardwell, for a detachable traction strap, is the only alleged anticipating device upon which we have had any trouble. One question of fact arises in connection with this patent, viz., were the transverse straps, or some of them, intended to pass around the felly of the wheel, or was it left optional to thus fasten them or not? The Parsons patent having been granted by the Patent Office, the burden is on the defendant to show anticipation. This burden the defendant has not clearly met. Were the case to turn on this question of fact, we would be inclined to hold that the Maxim & Bardwell patent contemplated that the device was to be thus fastened upon the wheel by such straps, more or less in number. It is not necessary, however, that we should thus hold.

As already stated, the Parsons concept was an entirely novel one in connection with automobile anti-skidding devices. It contemplated, in operation, two features: (a) that as a method of gripping the ground and thereby obtaining traction the transverse chains next the ground should loosely lie on the ground; and (b) that as a protection to the tire the transverse chains should move circumferentially around the tire—not that slow circumferential movement that is an incident even to the close fitting devices, but an easy circumferential movement—a movement that, instead of being a mere incident, is one of the functions of the adjustment. In the Parsons concept the transverse chains, instead of being practically an integral part of the wheel taking hold of the ground, are a part of the ground upon which the rubber of the wheel takes hold, and the circumferential movement, instead of being a forced movement resulting from the hammering of the transverse chains upon the ground, is a movement that results from the mere looseness of the adjustment; and these two distinct purposes of the concept find their mechanical embodiment in the utilization of the two rings smaller in diameter than the periphery of the wheel inclusive of the tire, so that they cannot come off, but long enough that the transverse chains, as they approach the ground in the revolution of the wheel, fall loose from the tire by gravity, thus falling loose upon the ground in advance of the wheel, and thus, also, causing them to advance circumferentially on the wheel.

The Maxim & Bardwell patent, on the other hand, was meant to be tight fitting—in effect an integral portion of the wheel—either because of the character of the material used or of the auxiliary means

of attachment; for anything else than a tight fitting sheath would not only destroy, in that device, the transverse straps, by rolling them up as the wheel proceeded, but would destroy the tires also, by turning in upon them the pins that the patent contemplated the straps should contain. In other words, Maxim & Bardwell had neither the concept of transverse straps being laid upon the ground upon which the rubber should take hold (the Parsons concept) nor the concept of circumferential motion as a function of the device and due to the looseness of the adjustment (the Parsons concept) nor the mechanical arrangement or embodiment that in operation would bring about that result.

[2] True, this difference, so far as it is a difference in mechanical arrangement and embodiment, is a difference largely of what we call the looseness or tightness of fitting of the rings upon the wheel. But this does not make it, in our judgment, a difference in degree only. It is just this looseness of fitting that makes the Parsons concept, in both of its purposes, practicable; and if the Maxim & Bardwell patent be practicable at all, it is just this absence of looseness of fitting that makes it so. In mechanical embodiment, therefore, as well as in concept, there is a tangible something that, present in the one and absent in the other, separates the one from the other—causes the one to operate differently from the other. True, that something is what may be called "Arrangement" or "Adjustment." But where "Arrangement" or "Adjustment" makes operative and practicable what was before inoperative and impracticable, and is not itself so obvious that its utilization is not of higher merit than the mechanic's skill, "Arrangement" or "Adjustment" may be the basis of invention. In our judgment the arrangement or adjustment of the Parsons concept would never have been thought of in connection with this use, outside the Parsons concept, and it is our judgment that the Parsons concept discloses invention of patentable merit.

Our study of the alleged infringing devices convinces us that they come within the concept of Parsons and its mechanical embodiment. The transverse chains in these devices are not tight fitting and are not intended to be tight fitting, subject only to the circumferential movement that comes from hammering on the ground. What might be called the law of the structure prevents their being tight fitting. True, Parsons has no patent on the law of the structure as such. But he was the first to see the advantage of such a structure and to construct accordingly. And what he has done and patented cannot be trespassed upon with impunity simply because the law of the structure necessarily turns what, in pretense or appearance may be called a tight fitting device, into the loose fitting device.

The decree of the Circuit Court is affirmed.

After filing the foregoing opinion, the following order was entered, modified by the decree below:

This cause having come on to be heard on the petition of Laurence A. Janney, amicus curiæ, praying that all reference to the so-called "Victor Device" be ordered to be stricken from the decree of the

Circuit Court, and the court having heard oral argument upon the merits of this petition, by Edward Rector, Esq., on behalf of appellees–complainants, and Laurence A. Janney, amicus curiæ, and the appellants–defendants having been represented at said hearing by Thomas F. Sheridan, Esq., now, upon consideration, it is ordered that said petition be and the same is hereby granted; that all reference to the so-called "Victor Device" be stricken from the decree of the Circuit Court; and that the decree of the Circuit Court so modified be affirmed.

