### SLATTERY et al. v. GODFREY.

(Circuit Court of Appeals, Third Circuit. June 7, 1926.)

No. 3439.

Patents ⬤328.

Slattery patent, No. 1,438,560, for repair links for tire chains, held valid and infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Patent infringement suit by Edward F. Slattery and another against Walter D. Godfrey, trading under the name Self-Closing Link & Chain Company. Decree for defendant, and plaintiffs appeal. Reversed, with directions.

The patent in suit was No. 1,438,560, issued to plaintiff Slattery December 12, 1922.

Melville Church, of Washington, D. C., for appellants.

Charles M. Clarke, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and DICKINSON, District Judge.

BUFFINGTON, Circuit Judge. This case concerns the upkeep and uninterrupted use on running automobiles of anti-skid chains. The importance of such chains, their lessening the danger of automobile travel, the invention displayed in their development, their wide use, their aggregate commercial value, and the space occupied by cases involving them as reported in patent decisions, all combine to evidence the important place they hold in automobile use. One type of such chains, commonly known as the Weed, entered the field of patent litigation in 1910, and the Putnam patent therefor was held valid in Weed v. Excelsior (C. C.) 179 F. 232, affirmed (C. C. A.) 192 F. 38, and certiorari denied 223 U. S. 727, 32 S. Ct. 526, 56 L. Ed. 632. By 1913, it was said by Judge Coxe, in Parsons Non-Skid Co. v. Willis Co., 209 F. 228, 126 C. C. A. 333: "If it be possible * * * to reach a stage where everything that has the remotest bearing on the issue has been said, and where every question relating to the validity of the patent has been decided, this would seem to be such a case. All the important questions have been decided over and over again by the unanimous judgments of 24 tribunals, 6 of them being courts of appeal." The utility and worth of such chains and their high inventive standing in the automobile art have been appreciated and commented upon by several seasoned patent judges, among whom it suffices to refer to Judge Lacombe's opinion in Weed v. Atlas (D. C.) 194 F. 448.

Yet, original, inventive, and effective as Parsons' creeping chain was, it had one weakness, which its inventor did not foresee and provide a remedy for, namely, cross-chain breakage. Use developed such weakness, and invention was required to remedy it. It will be noted the tensile strain and wearing abrasion of automobile chains center on their cross-chains, and such strain and wear lead to link weakening and link breaking. Moreover, such breaks only occurred when the machine was in use on wet roads, under adverse weather conditions, and where repairs were most difficult and most disagreeable to make.

Breaks in cross-chains, of course, affected both the traction grip and the anti-skid protection of such cross-chains, made the loose, revolving chains elements of discomfort, of injury to adjoining parts of the machine, and, if accompanied by other cross-chain link breaks, might lead to the whole chain slipping off and being lost. Those familiar with automobile practice will recall that, when link-breaking occurred, it was accepted as a necessary evil until the journey's end, when the chain was later removed and repaired; and, when repaired, the usual course was to pry open the hooks which held the loose ends and replace the broken chain with a new one, to do which a special tool was provided, with one part of which the hooks attaching the old cross-chain were pried open, and with the other part the hooks of the new cross-chain were clamped shut.

Of course, it goes without saying that emergency or spare links for coupling together the ends of a broken chain were old; that a blacksmith could weld a connecting link into any form the two ends of a broken chain required; that the automobile chain could be taken off and repaired, either on the road and at a garage, or that a skillful chauffeur could even repair the cross-chain while it was in place on the wheel, by using an open link of such a type that it could enter two end links and be locked by strong pliers and strong hands. But farther than this latter method no one had gone The record is bare of any practical mending device which restored the automobile chain to normal efficiency, and the only speculative automobile cross-chain remedy cited either by the research of Examiners in the Patent Office or by the industry of counsel in the case, namely, a patent No. 1,047,580, granted to Sidwell 12 years before the patent in suit, had left no impress on the art, and was one whose link was attached by pliers and the skill and strength of the operator.

Into this field, devoid of any other device then or now meeting the situation, the present patentee, a chauffeur of long experience, entered, and after repeated, but unsuccessful, attempts to solve the problem, finally gave the art a link of such simplicity that any one could simply slip it in place, that required no tools, no wrist strength or mechanical manipulation or cleverness, and when slipped on the cross-chain while still on the wheel, the contour of the new link was such that the driver could resume his place on the car and the tread of the wheel of the auto, as it advanced, locked the new link into such shape that it conformed to the other torsioned

links of the cross-chain, nested properly on the tire, and was as harmless as the other parts of the cross-chain to either injure the tire by puncture or abrasion, or change the relatively even surface of the cross-chain in contacting with the roadway. The device went into rapid general use, and its imitation in exact form by the defendant evidences its worth.

The difficulties confronting the inventor, the several steps by which they were surmounted, his advance through faulty devices to final success, are strikingly evidenced by a card given in evidence, which shows, in a way words cannot properly describe, the evolution of this device. Each link was a bit better than its predecessor, but none were effective practically. The proofs show his advance in experiments, his experimentally changing the successive devices, and his finally quite accidentally lighting on a form of link which effected what he never thought of before, and herein lies its gist and inventive significance, namely, an emergency link, which did away with pliers and, by subjecting itself to wheel tread, automatically locked itself. Its simplicity was such that an inexperienced driver could use it, could do so while the chain was in place, and with a rapidity and ease that with a minimum of effort and weather exposure effectively restored such an indispensable wet-road safeguard as an anti-skid chain to its normal state of protective efficiency. To protect such a novel, simple, inexpensive, useful, and inventive device from the covetous grasp of infringers, who would baldly duplicate it, is to make effective the constitutional intent "to promote * * * the useful arts by securing for limited times to * * * inventors the exclusive right to their respective * * * discoveries."

Accordingly, we reverse the decree below, direct the bill restored, the patent decreed valid, and an accounting ordered.