## SLATTERY et al. v. EUREKA AUTO CHAIN CO.

### No. 816.

District Court, D. Delaware.

Feb. 15, 1932.

William G. Mahaffy, of Wilmington, Del., and Edward H. Cumpston, of Rochester, N. Y., for plaintiffs.

Paul Leahy, of Wilmington, Del., and Joseph Gray Jackson, of Philadelphia, Pa., for defendant.

NIELDS, District Judge.

The plaintiff, Edward F. Slattery, granted an exclusive license to his coplaintiff, Peter J.

Nagle, under United States letters patent No. 1,438,560, for a "Repair Link for Tire Chains." In this suit they charge Eureka Auto Chain Company, a Delaware corporation, with infringement, and seek an injunction and an accounting.

The defendant in its answer denies infringement and by way of counterclaim charges the plaintiffs with infringement of Roth United States patents No. 1,692,577 and No. 1,734,830, assigned to it, for an "Emergency Repair Link."

The links in controversy are used extensively for the repair of broken cross-chains of automobile tire chains. Slattery, in his specification, states: "My invention relates to anti-skid tire chains and it has for its object to provide a simple and efficient repair link of a nature enabling it to be used with convenience and despatch in temporarily reuniting the loose ends of a cross chain the link of which has worn through and become broken." The essential feature of the invention is to "provide a repair link for rejoining the broken ends of the cross chain which may be quickly put in place without the use of tools."

The Slattery patent discloses the invention as embodied in a single piece of round wire rod bent into two opposite turned loops. Before use these loops lie in intersecting planes. The free end of one loop is substantially opposite the eye of the other loop. In replacing the broken link to connect the ends of the broken cross-chain, one loop of the repair link passes through one end of the broken cross-chain and rests securely on the tire surface, and the other loop inclined upwardly passes through the other end of the broken cross-chain and connects the ends together. According to the specification the link may be closed with foot pressure. The patentee, however, did not limit his invention to this method of closure, and is not confined to the method described. In 1917 sand, mud, and gravel roads were more common than the present-day hard-surface roads. Naturally at that time Slattery selected closure with pressure from the foot in his specification rather than methods of closure more obvious now. At present, closure by weight of the car is the more obvious and convenient method. This method of operation was clearly pointed out by the patentee in his specification as originally filed and during the prosecution of his application in the Patent Office. In fact, the conception of the invention grew out of the closure of an experimental link by the weight of the car. An initial inclination of the upstanding loop at less than a right angle

will insure the closing of the link. A repair link operated without the use of tools was the heart of the invention. The patent is not limited to any particular method of closure.

The patent contains two claims. Both are in suit.

Defendant's exhaustive brief discusses many questions. But the Slattery patent has been held valid and infringed by the Circuit Court of Appeals of this circuit and of the Seventh Circuit. Slattery v. Godfrey, 13 F. (2d) 350 (C. C. A. 3); Slattery v. Johnson Motor Products Co., 27 F.(2d) 209 (C. C. A. 7). Faced with these adjudications the defendant admits the validity of the patent in suit and rests on the single defense of noninfringement.

Defendant's links are not essentially different from the links found to be infringements in the Godfrey and Johnson Cases. The variations are merely matters of detail. They do not involve a different structure or different principle of operation. Defendant's links are repair links for cross-chains of automobile tires composed of wire stock bent into two open loops. Defendant differentiates its links from that of the plaintiff and the infringing links in the prior suits on the ground that the loops of its links are not in strict planes but slightly depart therefrom, and its links have a "rocking" or tiltable" base. A slight twist of the link giving to the loops a so-called spiral inclination will effect this change and thereby depart from a truly nontiltable base. Such a departure, however, is immaterial. For all practical uses the links are identical. The spiral form, tiltable base, and lack of plane in the loops of defendant's links, may all be effected by a slight outward twist of the free ends of the loops and are not substantial departures from the form of structure or principle of operation of the Slattery link. In each the curved portion of one loop and the adjacent straight portions of the body and free end provide a substantially flat and substantially nontiltable base.

Some stress is laid by the defendant upon the fact that the claims in suit refer to the loops as "being arranged in intersecting planes." Reading the specification as a whole it is clear that this phrase is only intended as a description of the general arrangement of the loops relative to each other.

The place taken by plaintiff's link in the art entitles the claims of the patent to a fair range of equivalency. It is not necessary that the loops lie in intersecting planes, using that word in its technical sense. The state of the

art is well set out in Slattery v. Godfrey, supra.

Tested by the claims of the Slattery patent, it is immaterial whether the free ends of defendant's links are superimposed or otherwise so long as they lie substantially adjacent to each other to close the link. The defendant's links each comprise substantially the same combination and arrangement of parts operating in substantially the same manner and accomplishing substantially the same result as the link of the Slattery patent.

The defendant contends that claim 2 is a combination claim covering a repair link and cross-chain and that the plaintiff has offered no proof that defendant has made, used, or sold cross-chains with any of its repair links. Defendant advertised that its links would repair cross-chains. It is clear on the record that sales by the defendant of such links constitute contributory infringement of claim 2.

I am satisfied that the defendant has infringed both claims of the Slattery patent.

Defendant failed to offer any evidence to support its counterclaim. For that reason alone the counterclaim might be dismissed. It appears, however, that defendant circularized the automobile trade charging plaintiffs and their selling organization with infringement of the Roth patents. A post card circulated by the defendant stated: "We will vigorously prosecute every dealer who handles these [Slattery] links which infringe the 'Double-Wear' patent No. 1,734,830." In a printed letter addressed "To the Automotive Trade" and broadcast to the trade generally throughout the United States, defendant referred to this case and defendant's counterclaim, and stated: "Despite every effort from that time [the date of filing of this suit] we have been unable to get the complainants to move their application for restraint. They are unwilling to meet the issue at this time and apparently their action was either insti-

tuted in bad faith, or for the purpose of intimidating our customers, or they realize that they are guilty of a deliberate infringement upon our patents." Plaintiff has met this challenge. At the trial defendant sought to have its counterclaim dismissed. The court denied its motion. Under the circumstances the validity of the Roth patents should be adjudicated in this suit.

The Slattery patent was issued December 12, 1922. The Roth patents were not applied for until 1927 and 1928. The specification in both Roth patents states: "This invention relates to improvements in emergency repair links of that type used for the purpose of rejoining the ends of broken cross chains of anti-skid tire chains, and more particularly to improvements in that link of this type that comprises a body and open loops located at the ends of the body and having their free end portions extending inwardly beyond each other and arranged in parallel relation to each other and to the body."

It is clear that Roth had in mind the Slattery link as described in the Slattery patent. There is nothing more in the links patented to Roth as distinguished from the Slattery link than a difference of material, a slight difference in length of the free ends of the loops, and a slight departure from a truly flat base to a substantially flat base—changes which would occur to any skilled mechanic without the exercise of the inventive faculty should they be found desirable. Defendant's three links are embodiments of the Roth patents. Already in this opinion the court has found these links were infringements of the Slattery patent. It necessarily follows that the Roth patents, applied for more than two years after the issuance of the Slattery patent and more than two years after public use of the Slattery link, are invalid. The counterclaim must be dismissed.

A decree in conformity with this opinion may be submitted.